No. 24-2639 & 24-2640

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

ROBERT SOFALY, *et al.*

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC

*Appellee.*

APPEAL OF: JOSHUA P. WARD, TRAVIS A. GORDON, & J.P. WARD & ASSOCIATES, LLC, *Appellants*

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:23-cv-2018, 2:24-cv-53)
District Judge: Cathy Bissoon

# REPLY BRIEF FOR APPELLANTS

RYAN H. JAMES
JAMES LAW, LLC
1200 Lincoln Way
White Oak, Pennsylvania 15131
412-977-1827 | 412-896-1321 (Fax)
ryan@rhjameslaw.com


*Counsel for Appellants*

# CORPORATE DISCLOSURE STATEMENT

J.P. Ward and Associates is a law firm and professional limited liability company organized in Pennsylvania and wholly owned by Joshua P. Ward.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

ARGUMENT ....................................................................................................... 1

    1.  JPW never asked this Court to "condone" its practices .................. 1

    2.  JPW did not waive argument with respect to the imposition of attorneys' fees. ............................................................................... 2

    3.  JPW did not waive its argument that Rule 11 does not apply to the original complaints filed in state court. .................................... 3

    4.  PRA failed to explain how JPW had any "improper purpose" within the meaning of Rule 11 ........................................................ 5

    5.  PRA failed to describe or cite the "factual misrepresentations" JPW allegedly made in court. ......................................................... 8

    6.  JPW's claims were "objectively reasonable." ................................. 9

    7.  PRA failed to adequately address inherent authority .................. 11

    8.  PRA conflates the standard of review with likelihood of success on the merits. ............................................................................... 12

CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991) ................................................................ 13

*Evans v. Portfolio Recovery Assocs., LLC*,
 889 F.3d 337 (7th Cir. 2018) ................................................ 2, 11

*Fashauer v. New Jersey Transit Rail Operations*,
 57 F.3d 1269 (3d Cir. 1995) .................................................. 13

*Kraus v. Prof'l Bureau of Collections*,
 281 F. Supp. 312 (E.D.N.Y. 2017) ........................................... 7

*North Star Capital Acquisitions, LLC v. Krig*,
 2011 U.S. Dist. LEXIS 4596 (M.D. Fla. 2011) ................................ 8

**Rules**

Fed.R.Civ.P. 11(b) ...................................................................... 4

Fed.R.Civ.P. 11(b)(1) .................................................................. 6

Fed.R.Civ.P. 11(b)(3) .................................................................. 5

In its Brief for Appellee, Portfolio Recovery Associates ("PRA") raises several points that merit a response.

## ARGUMENT

**1. JPW never asked this Court to "condone" its practices.**

First, PRA characterizes JPW's arguments on appeal as "ask[ing] this Court to condone their practice." *See* Br. Appellee, at 5. JPW is not asking this Court, or anyone for that matter, to "condone their practice," as much as it is asking this Court to exclude sanctions for things that ought not fall under the auspices of Rule 11 or inherent authority. The thrust of JPW's argument is that the district court's imposition of Rule 11 sanctions was improper because Rule 11 governs "representations to the court," and not pre-litigation strategy. *See* Br. Appellant, at 15. Moreover, JPW argued that Rule 11 doesn't apply in circumstances where the complaints were originally filed in state court. *Id.* And finally, as JPW argued in its opening brief, the district court's invocation of Rule 11 as a tool for punishing alleged pre-suit conduct was misplaced due to concepts of agency. *Id.* At no point did JPW ask this Court to "condone" its practices. Moreover, insofar as the propriety of JPW's practices were concerned, this "dispute letter" practice was

1

informed by *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018), wherein PRA attempted to construe dispute letters as "attorney representation letters." *Id*. at 343. In sending these dispute letters from the client, PRA was unable to assert its prior arguments from *Evans* that the letters were merely "attorney representation letters." So JPW wasn't asking this Court to "condone their practices" as much as it was imploring recognition of the circumstances of *Evans,* and how those circumstances informed their strategy, and, thus, exclude the imposition of sanctions for things falling outside the auspices of Rule 11 and inherent authority. In other words, JPW's argument is that Rule 11 and the court's inherent authority should not touch matters that apply to pre-litigation strategy. The Court does not need to condone this strategy; indeed, there is an independent basis to address what the Court does not condone, and that is the disciplinary system.

**2. JPW did not waive argument with respect to the imposition of attorneys' fees.**

Second, PRA argued that JPW waived arguments relative to the imposition of attorneys' fees and costs because JPW "fail[ed] to oppose PRA's Motion in District Court[.]" *See* Br. Appellee, at 14 n.7. However,

JPW did not waive this argument. In fact, JPW adequately contested the entry of that order. *See* Doc. 29, at 6-8. Once the district court signaled, contrary to JPW's opposition, that it was going to award attorney's fees and costs, all that was left were mathematical calculations. *See* Appx30 (awarding fees, costs and expenses and directing a petition for fees and costs). PRA's motion predominantly focused on these calculations, and so amended Notices of Appeal were lodged once the fees and costs were set and memorialized. *See* Appx36-43. Hence, JPW did not waive this argument, as JPW vociferously argued its position in its Brief in Response to Rule to Show Cause. *See* Doc 29, at 6-8.

### 3. JPW did not waive its argument that Rule 11 does not apply to the original complaints filed in state court.

Moreover, PRA also argued that JPW waived its argument that Rule 11 does not apply to the original complaints because they were originally filed in Allegheny County then removed by PRA to the district court. Br. Appellee, at 14. JPW made a passing reference and nod to Rule 11 not applying to its state court filings removed to federal court. Br. Appellant, at 27 n.3. However, PRA misunderstands the thrust of JPW's argument. JPW's primary argument was that Rule 11

did not reach the dispute letters themselves because they were not "representations to the court" as defined under Rule 11. And contrary to PRA's assertions, this argument was adequately preserved in JPW's Brief in Response to Order to Show Cause. *See* Doc 29, at 6-18. As JPW argued in its brief below, "Rule 11 analysis must focus on the legitimacy of the Complaint itself, which should not expand to any evaluation of pre-complaint conduct." *Id*. at 6. Moreover, as asserted below, and in JPW's initial brief, Rule 11 only requires that (1) the factual contentions have evidentiary support; (2) the filing is not being presented for an improper purpose ("such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"); and (3) that the claims and legal contentions are warranted based on existing law or a nonfrivolous argument for changing the law. *See* Fed. R. Civ. P. 11(b).

The dispute letters attached to the complaints do not violate Rule 11. The letters, taken in conjunction with the complaints, give rise to a plausible claim for relief. As JPW pointed out, there was no obligation to disclose the agency relationship, and despite the district court's misgivings, the dispute letter is indeed "the real, tangible, genuine

evidence that forms the basis of this lawsuit, and Plaintiffs relied on the letter in forming the claims in good faith." Doc 29, at 10. Indeed, the factual contentions of the complaints had factual and evidentiary support—just as Rule 11 requires. *See* Fed. R. Civ. P. 11(b)(3). As JPW argued below, there was no requirement to disclose the agency relationship with JPW's clients, and therefore the Complaint itself contained nothing materially false. Doc. 29, at 8.

### 4. PRA failed to explain how JPW had any "improper purpose" within the meaning of Rule 11.

PRA overlooks that JPW argued below that when applying Rule 11 the Court must look at the complaint and determine whether the attorneys, *at the time of signing*, had any improper purpose as defined in Rule 11. The court's inquiry, as JPW argued, is properly limited to the purposes of filing the complaint, and not the litigation strategy employed in drafting the dispute letter. *Id*. at 10.

Nonetheless, PRA contends that the lawsuits were for an improper purpose because, in its view, the FDCPA cannot be used to help debtors achieve collateral goals such as credit repair or debt eradication. But this does not constitute an improper purpose as described under Rule 11. PRA spends several pages of its brief

5

describing the origins and purpose of the FDCPA and then goes to lengths to describe JPW's practice of FDCPA law as "a heightened level of FDCPA litigation abuse." Br. Appellee, at 2-4. PRA construes the standard under Rule 11 as encompassing the common law tort of abuse of process and characterizes JPW's litigation strategy as such. *Id.* at 22-23. Ultimately, PRA criticizes JPW and argues that their primary purpose in filing the lawsuits was "not to seek redress of injury or obtain relief provided by the statute." *Id.* at 24. It concludes that JPW's purpose in obtaining debt relief and credit repair was an improper purpose and cites to the FDCPA's relief provisions to say that "credit repair" and "debt eradication" are not among the forms of relief included in the statute. *Id.* at 24.

However, despite PRA's misgivings about JPW's litigation strategies, JPW's purpose was not improper under Rule 11. As noted above, Rule 11 specifically defines what constitutes an "improper purpose." And under Rule 11, a filing is for an "improper purpose" if its purpose is "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Collateral goals of

litigation, such as debt relief and credit repair are not among the "improper purpose[s]" contemplated by Rule 11.

Moreover, PRA does not explain how these collateral goals of litigation constitute an improper purpose under Rule 11, other than that it must be improper simply because debt eradication and credit repair do not appear in the remedy provision of the FDCPA. PRA does not articulate how credit repair and debt eradication can constitute harassment, cause unnecessary delay, or needlessly increase the cost of litigation.

Indeed, a constrained reading of the FDCPA that PRA advocates may afford relief of only statutory remedies and attorneys' fees, but, practically, an FDCPA claim may effectuate benefits beyond those specified in the statute. PRA specifically cites to *Kraus v. Prof'l Bureau of Collections*, 281 F. Supp. 312, 321 (E.D.N.Y. 2017) for the proposition that "the FDCPA is not a debt-relief statute [] and courts should not indulge thinly veiled attempts to use it as one." *See* Br. Appellee, at 24 (citing *Kraus*). However, in citing this dictum from *Kraus*, PRA overlooks footnote 7 of the *Kraus* Court's opinion, which recognizes that plaintiffs are eligible for $1,000 in statutory damages, on top of actual

damages and attorneys' fees. *See id.* at n.7 (citing 15 U.S.C. § 1692k(a)). The *Kraus* Court further recognized that "*[p]laintiffs also sometimes receive debt relief in settlements.*" *Id.*, citing *North Star Capital Acquisitions, LLC v. Krig*, 2011 U.S. Dist. LEXIS 4596, at *13 (M.D. Fla. 2011) (approving FDCPA class settlement in which settling class members "collectively received a significant amount of debt relief.") (emphasis added). Thus, although debt relief is not strictly contemplated as a statutory remedy within the FDCPA, it is beyond peradventure that such collateral relief may permissibly result from FDCPA litigation. Merely because such relief is not contemplated by statute does not mean that seeking such relief constitutes an improper purpose under Rule 11(b)(1).

As such, PRA's contention that these suits were filed for an improper purpose under Rule 11 is unavailing.

### 5. **PRA failed to describe or cite the "factual misrepresentations" JPW allegedly made in court.**

Next, PRA contends that JPW made "factual misrepresentations." Br. Appellee, at 25. This entire section of PRA's brief is filled with colorful language but is largely devoid of substantive discussion as to exactly *what* factual misrepresentations JPW allegedly made in court.

8

PRA fails to cite where, exactly, "[JPW] made a multitude of factual misrepresentations which the District Court described in detail[.]". *Id.* at 27. Instead, PRA focuses on JPW's beliefs regarding the agency relationship formed with its clients. Moreover, the discussion of agency largely focuses on the legal meaning of "agency," rather than discussing the factual implications of the agency relationship that was, in fact, created in these cases.

There were no factual misrepresentations made—these letters did in fact come from the clients under principles of agency, and the clients were aware of and consented to the sending of these letters. Moreover, as JPW argued in its opening brief before this Court, efforts were made by JPW to correct the specific averments of the complaints to be scrupulously accurate, by moving to amend the complaint in *Sofaly* and in filing an Amended Complaint in *Malcolm*. *See* Br. Appellant, at 20-21. Hence, it is unclear how PRA maintains that JPW made factual misrepresentations to the District Court.

**6. JPW's claims were "objectively reasonable."**

Next, in similarly colorful language, PRA contends that JPW's assertions that it had meritorious causes of action against PRA "was

9

not objectively reasonable." Br. Appellee, at 28. According to PRA, JPW's claims were not objectively reasonable because "the claims cannot be divorced from their deceptive origins." *Id*. at 29. Without discussing how, PRA baselessly claims that JPW "fundamentally mischaracterize[d] the holdings and reasoning of the cases they continue to trumpet." *Id*. PRA provides no discussion whatsoever as to how JPW's interpretation of the cited case law constitutes any sort of mischaracterization. In a particularly derisive tone, PRA goes as far as to describe the suits in the instant case as "barratry." *Id*.

Rather than dispassionately addressing JPW's contentions, PRA uses a variety of buzzwords to characterize JPW's claims. This approach, however, is unavailing, and fails to address JPW's arguments in its brief before this Court. Contrary to PRA's contentions, a lawsuit was indeed viable in this case. No such suit would have been viable had PRA updated the plaintiffs' credit reports to identify the debts as disputed. A dispute was made but no action followed from PRA. PRA's employ of buzzwords such as "deceit" and "entrapment" does not render what happened here deceit or entrapment. As JPW has explained, these letters were the product of creatively strategizing around PRA's

own litigation positions taken in the *Evans* case, where PRA asserted that the letters were "attorney representation letters." *See Evans,* 889 F.3d at 343. Each of JPW's clients were informed of the letters and their contents, and each client authorized their transmittal. Aside from nonsensical opinions contained in the letters, they contained no misrepresentations of *material* fact, and if PRA had conducted a cursory review of the letters it would have revealed that the letters contained a valid dispute. Hence, contrary to PRA's assertions, JPW's claims were indeed "objectively reasonable."

**7. PRA failed to adequately address inherent authority.**

In arguing that JPW failed to address inherent authority, PRA faults JPW for saying "*the parties* did not address the question of the court's inherent authority." Br. Appellee, at 30 n.10 (emphasis added). PRA cites to the district court's opinion where the court stated that "counsel hear what they want to hear and read things as they wish for them to have been written[,]" seemingly attempting to imply that JPW continues to "hear and read things as they wish." *Id.*, citing Appx17.

Undersigned counsel was the author of the opening brief, however, and the intention was not to fancifully group PRA within the notion of

11

"parties." This assertion was written in the context of articulating the plain-error standard, which only arises because the non-prevailing, sanctioned parties, *i.e.*, JPW and Attorneys Gordon and Ward, failed to address the issue of inherent authority. The "parties" at issue, therefore, are JPW and Attorneys Gordon and Ward.

But to say, nevertheless, that PRA adequately addressed the question of inherent authority at the cite it offers (2:23-cv-2018, ECF 31) is particularly troubling. A closer look at the cited filing reveals that PRA singularly references the word "inherent" only *one* time, and focuses repeatedly on Rule 11, rather than inherent authority. *See id.* at 12 ("PRA further believes that the Court has the *inherent* power to sanction such conduct, as PRA believes that counsel has engaged in unethical conduct.") (emphasis added). Thus, PRA cannot turn around and argue that it adequately addressed the issue of inherent authority when its discussion of the issue was cursory and conclusory, at best.

8. **PRA conflates the standard of review with likelihood of success on the merits.**

Finally, PRA contends that JPW neglected "to first explain why this Court should exercise its discretion to apply the standard in the first place," then suggests that failure to explain necessitates a waiver

of the use of plain-error review. Br. Appellee, at 32. But it offers no authority for that proposition.

The standard of review is the means by which the Court is to assess the waived argument. The exceptionality of the use of the standard in a civil context goes more to the likelihood of success on the merits rather than whether the standard applies at all. Contrary to PRA's assertions, JPW did address and explain why the Court should exercise its discretion to apply the standard here. As noted in JPW's Brief for Appellant, plain error review is appropriate where "the error is so serious and flagrant," affecting the fairness, integrity, or public reputation of judicial proceedings. *See* Br. Appellant, at 31, citing *Fashauer v. New Jersey Transit Rail Operations*, 57 F.3d 1269, 1289 (3d Cir. 1995). And as explained in the opening brief, the district court misapplied and misconstrued the holding of *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), by concluding that the district court could use its inherent power to sanction without first determining whether the Rules or statute provided an adequate mechanism. Thus, JPW did not waive its argument that plain-error review applies, as JPW laid out how exactly such standard of review applies in its brief.

## CONCLUSION

For the reasons set forth above and those in the opening brief, this Court should vacate the judgment and imposition of sanctions.

Respectfully submitted.

*s/Ryan H. James*
Ryan H. James (PA 313049)
JAMES LAW, LLC
1200 Lincoln Way
White Oak, Pennsylvania 15131
412-977-1827
412-896-1321 (Fax)
ryan@rhjameslaw.com
*Counsel for Appellants*

Date: April 23, 2025

# CERTIFICATE OF COMPLIANCE

I, Ryan H. James, a member of the bar of this Court, certify the following:

1. This document complies with the word limit of either Fed. R. App. P. 27(d)(2)(A) or 32(a)(7)(B), as may be applicable, because, excluding the parts of the document exempted by Fed. R. App. 27(a)(2)(B) and 32(f), this document contains 3,210 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word v. 16.96 and using 14-point Century Schoolbook font.

3. Pursuant to 3d Cir. L.A.R. 31.1(c) (2011), this document was prepared using MacOS; therefore, no anti-virus or cleaning apps were used as such would conflict with MacOS's own built-in security.

4. The text of this document in electronic form is identical to the text of any paper copies, if any.

*s/Ryan H. James*

## CERTIFICATE OF SERVICE

Pursuant to 3d Cir. L.A.R. 113.4(c), I certify that counsel for the opposing party is a Filing User of the Court's electronic filing system and was served electronically with the present document by the Notice of Docket Activity.

Date: April 23, 2025                              *s/Ryan H. James*